**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIM E. CHANDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1141 |
| | ) | Judge Nora Barry Fischer |
| L'OREAL USA, INC. and SOFT SHEEN-CARSON LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

I.      INTRODUCTION

In this products liability action, Plaintiff Kim Chandler ("Plaintiff") alleges that she was injured after using an at-home hair relaxer product manufactured and sold by Defendants L'Oreal USA, Inc. and Soft Sheen-Carson, Inc., ("Defendants"). (Docket No. 1-1). Plaintiff asserts claims for strict liability, negligence, breach of implied warranty, fraud and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against Defendants. (*Id.*). Presently before the Court is a motion for summary judgment filed by Defendants which is opposed by Plaintiff. (Docket Nos. 36; 40). The motion has been fully briefed and neither party requested oral argument, making it ripe for disposition. (Docket Nos. 36-41; 44-45). After careful consideration of the parties' arguments, and for the following reasons, Defendants' motion is granted.

II.      BACKGROUND

*A. Relevant Facts*

Plaintiff is a 62-year old resident of Uniontown, Pennsylvania. (Docket No. 1-1 at 13). She has shoulder length hair which she described as "coarse" and 40 years of experience applying

at-home hair relaxer products to straighten her hair. (Docket Nos. 38 at ¶ 3; 41 at ¶ 3; Docket No. 38-2 at 16-17). For the past decade, Plaintiff has relaxed her hair with Defendants' Dark and Lovely ® relaxer. (*Id.*). She estimated that she applies this type of product to the areas of regrowth in her hair every four weeks. (Docket No. 38-2 at 38).

On March 11, 2017, Plaintiff went to her local CVS pharmacy in order to purchase Dark and Lovely ® relaxer but the store was out of this product. (Docket Nos. 38 at ¶ 4; 41 at ¶ 4). Rather than travel to a different store, she purchased Defendants' Regular Optimum Salon Haircare ® Defy Breakage Salon No-Lye Relaxer (the "Defy Breakage relaxer"), explaining that she did so because her hair "needed done." (Docket Nos. 38 at ¶ 1; 41 at ¶ 1). Plaintiff testified that she had not previously used the Defy Breakage relaxer. (Docket Nos. 38 at ¶ 2; 41 at ¶ 2). She conceded that when she purchased the Defy Breakage relaxer, she did not look at the exterior packaging other than to determine the strength of the product, which was listed on the box as "regular." (Docket No. 38-2 at 38). Plaintiff admitted that she did not read any of the warnings on the exterior of the box or the list of ingredients. (*Id.*). However, she stated that she read the instructions contained within the box before using the Defy Breakage relaxer. (Docket Nos. 38 at ¶ 15; 41 at ¶ 15).

The front of the exterior packaging of the Defy Breakage relaxer contains a photograph of a female model with straight hair. (Docket No. 38-3). The product is advertised as a "No-Lye Relaxer," "with whipped oil moisturizer," and "90% Less Breakage," for "Stronger, Smoother, Hair," on both the front and top of the package. (*Id.*). These areas also include "IMPORTANT – READ & FOLLOW THE SAFETY INSTRUCTIONS," in smaller print. (*Id.*). The bottom of the packaging lists the product's chemical ingredients and describes the contents of the box. (*Id.*).

The rear of the exterior packaging also provides that the Defy Breakage relaxer offers "Exclusive Salon Haircare at Home," and "90% LESS BREAKAGE," "[w]ith patented Strengthening Ceramide, and Coconut Oil, Defy Breakage Relaxer Kit helps replenish moisture for smooth, healthy-looking hair. Supreme conditioning infused at every step, before, during and after relaxing." (*Id.*). This portion also lists the seven items contained within the box, numbering them one through seven. (*Id.*).

The side of the exterior packaging contains the following warnings:

### IMPORTANT – READ BEFORE PURCHASING
- This product may not be suitable for all hair types; a strand test must be performed prior to application.
- Use the strength of relaxer suited to your hair.

…

- Do not use on bleached hair, highlighted hair, hair treated with henna or metallic salts, or hair processed with a thio/perm product such as thioglycolate, thiolactate, cysteine, cysteamine, sulfite. Hair loss or breakage could occur.
- Do not use on hair that is fragile, breaking, splitting or otherwise damaged; for example, due to frequent coloring or other chemical processes.
- If you have permanent or demi-permanent haircolor, wait at least 2 weeks before relaxing.
- Do not use if you have a sensitive, irritated or damaged scalp.
- It is recommended that you use petroleum jelly during application as indicated in enclosed instructions.

…

### USAGE ADVISORY – SAFETY WARNINGS
- Read and follow enclosed instruction sheet completely before using. Failure to follow instructions or warnings or other misuse of the product can cause serious injury to eyes or skin and can damage hair or result in permanent hair loss.

…

- Contains alkali.
- Wear gloves provided in the kit throughout the relaxing process.
- Avoid contact with eyes. Can cause blindness…
- Keep relaxer off scalp and other skin areas.
- In case of contact with skin, rinse immediately.

(Docket No. 38-3).

An instructions page is enclosed within the packaging. (Docket No. 38-4). Under the "SAFETY WARNINGS" section, the instructions reiterate that "[t]his product may not be suitable for all hair types; a strand test must be performed prior to application" and contain two separate lists, the relevant portions of which follow:

> When you should NOT relax your hair:
> - Not suitable for use in children
> - If you have a sensitive, irritated or damaged scalp
> - If hair has been bleached or highlighted, processed with a thio (perm) product …. or treated with henna or metallic salts.  Hair loss or breakage could occur.
> - If hair is fragile, breaking, splitting or otherwise damaged, for example, due to frequent coloring or other chemical processes
>
> …
>
> - If the strand test results in hair breakage or scalp irritation, do not relax hair.
>
> …
>
> What you should know before relaxing your hair:
> - Keep out of reach of children
> - This product may not be suitable for all hair types: a strand test must be performed prior to application
> - Read and follow directions and warnings completely. Failure to follow directions and warnings, or other misuse of the product can cause serious injury to eyes or skin and can damage hair or result in permanent hair loss.
>
> …
>
> - Use the strength of Optimum Care relaxer suited to your hair.
> - If hair has been relaxed previously, apply product to new growth only.  Application of product to previously relaxed hair can cause hair breakage.
>
> …
>
> FOLLOW ALL DIRECTIONS CAREFULLY

(*Id.*).  A separate section titled "PREPARATION OF THE HAIR," provides that:

> Following the application directions, test the mixture on one hair strand before relaxing all the hair.  In case of hair breakage or scalp irritation after the test, do not use this product or any other relaxer. Because timing and precision application is imperative to avoid hair loss, hair breakage and/or scalp injury, it is recommended that you do not apply the relaxer yourself. Ask another person to assist you.

4

> Always do a strand test before relaxing, even if you have relaxed before. The Strand Test determines how long to straighten the hair. Prior to application, it is recommended that you apply petroleum jelly on hairline, nape of neck and ear area only.

(*Id.*). Once the relaxer is applied to the strand, the instructions direct users to:

> check texture and straightness of your hair frequently while waiting. If they are satisfactory before recommended processing time is up, end the test. Record time in Time Chart above and use as your processing time. Otherwise, use the time recommended in Time Chart. Never exceed the maximum processing time indicated in the Timing Chart.

(*Id.*). The instructions also provide that "[i]n case of hair breakage or scalp irritation after the test, do not use this product or any other relaxer." (*Id.*).

Under the "APPLICATION" section, there is a Timing Chart which has three columns for hair type, recommended strength, and processing time. (*Id.*). For "normal" hair, the recommended strength is the "Regular" relaxer and the processing time is 15-18 minutes. (*Id.*). For "coarse" hair, the recommended strength is the "Super" relaxer (a different product) and the processing time is 18-20 minutes. (*Id.*). Finally, the instructions list a step-by-step process for using the relaxer. (*Id.*). Relevant here, the second step "Apply the Relaxer Mixture" instructs users to:

> Set a clock or a timer. Apply relaxer mixture to dry hair per the directions below without touching scalp. If the hair has already been relaxed, apply to new growth only. Follow the processing times. The application time should be counted in the total processing time. NEVER LEAVE THE RELAXER MIXTURE ON HAIR LONGER THAN THE MAXIMUM PROCESSING TIME INDICATED IN THE STRAND TEST. NEVER EXCEED THE MAXIMUM PROCESSING TIME INDICATED IN THE TIME CHART.

(*Id.*).

Plaintiff did not apply the Defy Breakage relaxer to her hair immediately after purchasing the product. Two days later, on March 13, 2017, Plaintiff used a heated curling iron on her hair in preparation of the application. (Docket No. 38-2 at 37). She applied the relaxer the next day,

5

March 14, 2017.  (Docket No. 38-5). Plaintiff did not ask anyone to assist her and applied the relaxer herself. (*Id*.). Plaintiff admitted that she did not perform a strand test prior to applying the relaxer. (Docket No. 38-2 at 42). She testified that she had never performed a strand test when applying a relaxer product to her hair in the past.  (*Id*.).  Plaintiff stated that she left the relaxer in her hair for 20 minutes and that the time included her preparation time.  (*Id.* at 43).  She explained that her hair was "coarse" and used the time provided in the instructions for that hair type. (*Id*.). When Plaintiff rinsed off the relaxer, some of her hair fell out and went down the drain. (*Id.* at 48). Plaintiff kept the box for the Defy Breakage relaxer but did not retain any of its contents.  (Docket No. 38-5 at 2).

Two weeks after sustaining this injury, on March 28, 2017, Plaintiff sought treatment from Dr. Dayna Hrovath of Mountain State Dermatology and was diagnosed with traumatic alopecia of the scalp and prescribed medications to treat her condition. (Docket No. 1-1).   In a letter prepared on that date, Dr. Hrovath states that:

> Kim Chandler […] presented to our office today with hair loss to her superior scalp.  She states that a week ago she was using "Optimum Care Hair Relaxer" according to directions and when she rinsed, her hair fell out.  She denies burning or rash.
>
> Upon examination there was a large area on her superior scalp of widespread hair loss.  No erythema, burns or rash present.
>
> Diagnosis is traumatic alopecia to scalp.  We are treating her to encourage hair regrowth, but this is not guaranteed to help.

(Docket No. 1-1 at 13).  Since this initial visit, Plaintiff has experienced some regrowth of her hair, although it has not returned to its original state prior to using Defendants' product.  (Docket No. 38-2 at 57).

*B. Procedural History*

Plaintiff filed this case on August 4, 2017 in the Court of Common Pleas of Fayette County and Defendants removed the action to this Court on August 30, 2017. (Docket No. 1). Defendants filed their Answer on September 6, 2017. (Docket No. 5). The parties' efforts at resolving the matter through Court-ordered mediation were unsuccessful and the case continued through discovery, which ended on March 9, 2018. (Docket Nos. 15; 34). In the interim, the Court denied motions filed by Plaintiff to remand the matter to Fayette County and to compel discovery, the latter of which was resolved after the parties completed a meet and confer at the Court's direction. (Docket Nos. 22; 32; 34). The Court likewise denied Defendants' partial motion for summary judgment as it was filed prematurely while discovery was ongoing and prior to the Court establishing a briefing schedule. (Docket No. 28).

After discovery concluded and the Court entered a briefing schedule, Defendants submitted the pending motion for summary judgment, supporting brief, concise statement of material facts and appendix on April 9, 2018. (Docket Nos. 36-38). Plaintiff responded on May 4, 2018 by filing her response, concise statement of material facts and opposing brief. (Docket Nos. 39-41). Plaintiff did not present any additional evidence in opposition to the motion. (*Id*.). Defendants replied on June 4, 2018. (Docket No. 44). Plaintiff then filed her sur-reply on June 7, 2018. (Docket No. 42). Neither party requested that the Court hold oral argument. (*See* Docket No. 35). Accordingly, as the motion is now fully briefed, it is ripe for disposition.

III.    LEGAL STANDARD

Summary Judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact is one that could affect the outcome of

litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, deposition testimony, admissions, and/or interrogatories to demonstrate the existence of a genuine

issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

IV.  DISCUSSION

Defendants move for summary judgment as to each of Plaintiff's product liability claims set forth in her Complaint, i.e., breach of implied warranty of merchantability, negligent failure to warn, strict liability, fraud, and an asserted violation of the UTPCPL.[1]  (Docket Nos. 37; 44). Defendants maintain that Plaintiff failed to present sufficient evidence to demonstrate that the Defy Breakage relaxer was defective and that the product's advertising contained any misrepresentations upon which she justifiably relied.  (*Id.*).  Plaintiff counters that she has met her burden to show genuine disputes of material fact as to each of her causes of action such that she should be allowed to present her case to a jury at trial.  (Docket Nos. 40; 45).  After careful consideration of the parties' positions and the evidence of record, the Court finds that there are no genuine disputes of material fact and that Defendants are entitled to judgment as a matter of law on each of Plaintiff's causes of action.  The Court initially explains its rationale for granting summary judgment as to Plaintiff's strict liability, negligent failure to warn, and breach of implied warranty claims and then discusses the insufficiency of the evidence as to her fraud and UTPCPL claims.

A.  *Insufficient Evidence of Product Defect*

In order for Plaintiff to prevail on her strict liability, negligence, and breach of implied warranty claims, it is her burden to demonstrate that the Defy Breakage relaxer was defective.  *See*

---

[1]     The Court notes that it need not engage in a choice-of-law analysis because the parties agree that all of Plaintiff's claims are governed by Pennsylvania law.  *See e.g., Walney v. SWEPI LP*, 311 F. Supp. 3d 696, 706, n.7 (W.D. Pa. Apr. 20, 2018) (citations omitted) ("the parties have implicitly agreed that Pennsylvania law governs the contractual claims at issue in this case, as they discuss only Pennsylvania law in their respective briefs. Accordingly, the court need not engage in a choice-of-law analysis.").

*e.g.*, *McDaniel v. Kidde Residential and Fire & Commercial*, 2015 WL 1326332, at *6 (W.D. Pa. Mar. 24, 2015) ("In order to bring a claim for strict liability, negligence, and breach of warranties, Plaintiffs must prove, inter alia, that the [product] was defective."); *White v. Home Depot*, 2018 WL 2173960, at *4 (W.D. Pa. May 10, 2018) ("Plaintiffs bring claims of strict liability, negligence, and breach of warranty," and "[t]he 'threshold inquiry' for all of these theories is whether the product was defective."). Plaintiff asserts that the product is defective under failure to warn and manufacturing defect theories of liability.[2] (Docket No. 1-1). The Court examines the sufficiency of the record evidence as to both theories, in turn.

1.  Failure to Warn

Plaintiff's failure to warn claims sound in strict liability and negligence. (Docket No. 1-1). Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts for strict products liability claims. *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014). Section 402A provides, in pertinent part, that a seller is strictly liable for physical harm caused by "any product in a defective condition unreasonably dangerous to the user or consumer." Restatement (Second) of Torts § 402A. A plaintiff "seeking relief under a strict product liability cause of action must prove that 'the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm.'" *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 345–46, *reargument denied* (Mar. 16, 2017), *appeal denied*, 171 A.3d 1287 (Pa. 2017) (quoting *Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349, 354–55 (Pa. Super. Ct. 2015)). "A dangerous product can be considered 'defective' for strict liability purposes if it is

---

[2]      The Court notes that Pennsylvania law also permits a strict liability claim alleging that a product is defectively designed but no such claim is advanced by Plaintiff in this case. *See e.g.*, *Roudabush v. Rondo, Inc.*, No. 3:15-CV-059, 2017 WL 3912370, at *2 (W.D. Pa. Sept. 5, 2017) (quotation omitted) ("A defective condition may be established by proving either a manufacturing defect, a design defect, or a failure-to-warn defect.").

distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Davis v. Berwind Corp.*, 547 Pa. 260, 267 (Pa. 1997) (citing *Mackowick v. Westinghouse Electric Corp.*, 525 Pa. 52 (1990)). "The determination of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge." *Id.*

In Pennsylvania, claims for negligent failure to warn are governed under Section 388 of the Restatement (Second) of Torts. *Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 853 (E.D. Pa. 2017) (citing *Incollingo v. Ewing*, 282 A.2d 206, 220 n.8 (Pa. 1971)). Under Section 388, the manufacturer has a duty to exercise reasonable care to inform those for whose use the article is manufactured of the facts which make it likely to be dangerous. *Id.* To sustain a claim for negligence under Pennsylvania law, Plaintiff must show that: (1) Defendants owed a duty to Plaintiff; (2) Defendants breached that duty; and (3) that breach was the proximate cause of Plaintiff's injuries. *Rowland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 556, 569 (W.D. Pa. 2014) (citation omitted). Plaintiff must also show that the manufacturer was at fault. *Igwe v. Skaggs*, 258 F. Supp. 3d 596, 614 (W.D. Pa. 2017).

Although negligence and strict liability claims remain distinct under Pennsylvania law, there is some overlap in the context of a failure to warn theory. *See Igwe*, 258 F. Supp. 3d at 614. Whether the claim is based on strict liability or negligence, a plaintiff must show that the absence or inadequacy of warnings was the factual and proximate cause of the injury. *Id.* In a failure to warn case, the question of causation is ordinarily left to the jury. *Punch v. Dollar Tree Stores, Inc.*, 2017 WL 752396, at *15 (W.D. Pa. Feb. 17, 2017). However, to reach a jury, "the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury" and "if the relevant facts are not in dispute and the

remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law." *Id.* (quoting *Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (3d Cir. 1984)). Similarly, "[i]f a product contains a sufficiently clear warning, and the purchaser or user disregards that warning and is injured as a result, the manufacturer is not liable as a matter of law." *Roudabush v. Rondo, Inc.*, 2017 WL 3912370, at *7 (W.D. Pa. Sept. 5, 2017).

In this Court's estimation, Plaintiff has failed to present sufficient evidence to establish a genuine dispute of material fact for trial on her failure to warn claims as a reasonable jury could not conclude that the warnings provided were inadequate and no evidence has been presented to demonstrate that an adequate warning may have prevented her injury. *See Flanagan v. martFIVE, LLC*, 259 F. Supp. 3d 316, 321 (W.D. Pa. Apr. 10, 2017) (quoting *Conti v. Ford Motor Co.*, 743 F.2d 195, 199 (3d Cir. 1984) ("a defendant may be liable in failure-to-warn claims 'only when there is sufficient evidence that additional warnings or reminders may have made a difference.'")). To this end, the record is undisputed that Plaintiff did not read the warnings on the exterior of the Defy Breakage relaxer box and while she read the warnings/instructions which were provided inside the box, she concedes that she ignored same. *See Hatcher v. SCM Group, N.A., Inc.*, 167 F. Supp. 3d 719, 730 (E.D. Pa. Mar. 1, 2016) (citing *Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186, 190-91 (Pa. 1997)) ("the Court must consider all of the warnings provided with the product, not just the on-product warnings, when evaluating whether a manufacturer is strictly liable for failure to warn."). This Court believes that the product's packaging and instruction sheet clearly warn consumers that failure to follow the written instructions may result in injury, including permanent hair loss, the exact injury about which Plaintiff complains. *See Roudabush*, 2017 WL 3912370, at *7. Moreover, the record is undisputed that Plaintiff applied the relaxer to her hair without conducting a strand test which the instructions note, repeatedly, is necessary because the

product is not suitable for all hair types.  (*See* Docket Nos. 38-3; 38-4).  Further, the purposes of

the test are to ensure that the product reacts properly to the user's hair and to determine how long

the product should be left in the hair after an application.  (*Id.*).

Specifically, the exterior warnings clearly state under bold headings "IMPORTANT –

READ BEFORE PURCHASING" and "USAGE ADVISORY – SAFETY WARNINGS" that:

> [t]his product may not be suitable for all hair types, a strand test
> must be performed prior to application [and] [r]ead and follow
> enclosed instruction sheet completely before using.  Failure to
> follow instructions or warnings or other misuse of the product can
> cause serious injury and can damage hair or result in permanent hair
> loss.

(Docket No. 38-3).  In similar vein, the interior instruction sheet states under a bold "SAFETY

WARNINGS" heading that "[t]his product may not be suitable for all hair types; a strand test must

be performed prior to application."  (Docket No. 38-4).  The directions further warn that "you

should NOT relax your hair" "if the strand test results in hair breakage or scalp irritation" and

reiterate that "this product may not be suitable for all hair types: a strand test must be performed

prior to application" as one of the important things "you should know before relaxing your hair."

(*Id.*).  A separate section titled "Preparation of the Hair" provides additional admonitions as to the

need for users to conduct a strand test and directions as to how to do so:

> Following the application directions, test the mixture on one hair
> strand before relaxing all the hair.  In case of hair breakage or scalp
> irritation after the test, do not use this product or any other relaxer.
> Because timing and precision application is imperative to avoid hair
> loss, hair breakage and/or scalp injury, it is recommended that you
> do not apply the relaxer yourself. Ask another person to assist you.
> Always do a strand test before relaxing, even if you have relaxed
> before.  The Strand Test determines how long to straighten the hair.
> Prior to application, it is recommended that you apply petroleum
> jelly on hairline, nape of neck and ear area only.
>                                    …
> […] check texture and straightness of your hair frequently while
> waiting. If they are satisfactory before recommended processing

time is up, end the test. Record time in Time Chart above and use as
your processing time. Otherwise, use the time recommended in
Time Chart. Never exceed the maximum processing time indicated
in the Timing Chart.

(*Id.*). The instructions again state that "[i]n case of hair breakage or scalp irritation after the test,

do not use this product or any other relaxer" and "NEVER LEAVE THE RELAXER MIXTURE

ON HAIR LONGER THAN THE MAXIMUM PROCESSING TIME INDICATED IN THE

STRAND TEST." (*Id.*).

Plaintiff has not adduced any evidence supporting her position that these warnings and

instructions were inadequate. (*See* Docket Nos. 39-41; 45). She also did not testify that she

misunderstood any of them. (Docket No. 38-2). Instead, she explained that she did not conduct a

strand test because she had never done so when applying different hair relaxer products to her hair

in the past. (*Id.* at 42). She described that she left the product in her hair for 20 minutes because

she has "coarse" hair and the table on the instruction sheet indicated that Defendants' "super"

relaxer should be applied for a maximum of 18-20 minutes to that hair type. (*Id*. at 42-3). In

addition, despite claiming the provided warnings were insufficient, Plaintiff has not presented any

evidence of an alternative warning which would have protected her from the harm she sustained.

(*See* Docket Nos. 38 at ¶ 25; 41 at ¶ 25 ("It is Plaintiff's position that the warning is insufficient.

It is not Plaintiff's obligation to provide Defendant with a sufficient warning.")). Absent such

evidence, a jury would have to speculate to find in her favor. *See Flanagan*, 259 F. Supp. 3d at

321. All told, Plaintiff has failed to meet her burden to establish that there is a genuine dispute of

material fact on her failure to warn claims, i.e., she has not proven that the product was

unreasonably dangerous due to an insufficient warning. *See Igwe*, 258 F. Supp. 3d at 614.

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's strict liability

and negligent failure to warn claims.

## 2. Manufacturing Defect

Plaintiff also asserts claims for strict liability and breach of the implied warranty of merchantability,[3] both of which rely upon proof of a manufacturing defect. (Docket No. 1-1). As noted, to make out a claim for strict products liability, Plaintiff must prove that (1) the relaxer was defective, (2) the defect existed when it left Defendants' hands, and (3) the defect caused the harm. *Igwe*, 258 F. Supp. 3d at 609 (citation omitted). "[A] manufacturing defect claim is essentially a claim 'that something went awry in the manufacturing process ... [and] the finder of fact need only compare the product that caused the injury with other products that were manufactured according to specifications.'" *Bergstresser v. Bristol-Myers Squibb Co.*, Civ. A. No. 3:12-1464, 2013 WL 1760525, at *3 (M.D. Pa. Apr. 24, 2013) (quoting *Dambacher v. Mallis*, 336 Pa. Super. 22, 485 A.2d 408, 426 (Pa. Super. Ct. 1984)). A manufacturing defect can be established by direct evidence of "a breakdown in the machine or a component thereof" or by circumstantial evidence of a product malfunction as long as Plaintiff rules out abnormal use or secondary causes of the injury. *Smith*, 251 F. Supp. 3d at 851 (citations omitted). "Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Tincher*, 104 A.3d at 335.[4]

---

[3]     Plaintiff clarifies in her Brief in Opposition that she has not asserted a claim for breach of implied warranty of fitness for a particular purpose. (Docket No. 40 at 7 ("Plaintiff's Complaint alleges an implied warranty of merchantability, and not a cause of action of 'fitness for a particular purpose.'")).

[4]     Although the decision in *Tincher* was limited to the context of a design defect claim, the Pennsylvania Supreme Court expressed that "the foundational principles upon which we touch may ultimately have broader implications by analogy." *Tincher*, 104 A.3d at 384 n.21. Pennsylvania courts have not directly addressed the application of *Tincher* to manufacturing defect claims. However, the Pennsylvania Superior Court has expressed a willingness to use *Tincher* as guidance for other strict products liability claims. *See Amato v. Bell & Gossett*, 116 A.3d 607, 620 (Pa. Super. Ct. 2015) ("[T]he *Tincher* Court nevertheless provided something of a road map for navigating the broader world of post-*Azzarello* strict liability law.").

The U.S. Court of Appeals for the Third Circuit recognizes that claims for breach of the implied warranty of merchantability and strict liability asserting a manufacturing defect are "essentially the same." *Smith*, 251 F. Supp. 3d at 854-55 (quoting *Gumbs v. Int'l Harvester, Inc.*, 718 F. 2d 88, 94 (3d Cir. 1983) (further citations omitted)); *White v. Home Depot*, 2018 WL 2173960, at \*4 (W.D. Pa. May 10, 2018) (same). Under Pennsylvania law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," 13 Pa. C.S. § 2314(a), and requires that goods "have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." *Gall v. Allegheny Cty. Health Dep't*, 555 A.2d 786, 789 (Pa. 1989) (citations omitted).

To establish a breach of the implied warranty of merchantability, Plaintiff must show that Defendants' relaxer was defective. *Altronics of Bethlehem v. Repco, Inc.* 957 F.2d 1102, 1105 (3d Cir. 1992). A product may be found defective if it "functioned improperly in the absence of abnormal use and reasonable secondary causes." *Id.* (quoting *Greco v. Bucciconi Eng'g Co.*, 407 F.2d 87, 89-90 (3d Cir. 1969)). Plaintiff bears the burden of demonstrating: (1) that the product malfunctioned; (2) that Plaintiff used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes. *Id.*

Initially, Plaintiff has not presented any direct evidence of a specific manufacturing defect in the Defy Breakage relaxer. (*See* Docket Nos. 39-41; 45). To this end, Plaintiff admits that she did not retain any portion of the product that she applied to her hair; hence it could not be evaluated (by an expert or otherwise) to determine if it adhered to the product specifications. (*See* Docket

Nos. 38-5 at 2; 41).  She likewise has not introduced any evidence of a defect in the entire batch or line of relaxer products from which the product she purchased was manufactured.  (*See* Docket Nos. 39-41; 45).  However, the absence of direct evidence is not fatal to her claim, as a manufacturing defect can be proven circumstantially under the malfunction theory.  *See Barnish v. KWI Bldg. Co.*, 602 Pa. 402, 412 (Pa. 2009) (quotation omitted) ("In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the 'malfunction' theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction.").

To meet her burden in this regard, Plaintiff must provide evidence of a malfunction along with evidence ruling out abnormal use or reasonable secondary causes of the malfunction. *See McDaniel*, 2015 WL 1326332 at *8 (citing *Barnish*, 980 A.2d at 541).  "Establishing a prima facie case under a malfunction theory does not require a plaintiff to proffer expert testimony to prove how the product was defective or how the defect arose as a result of actions taken by the manufacturer or seller." *Wilson v. Saint-Gobain Universal Abrasives, Inc.*, No. 213-CV-1326, 2015 WL 1499477, at *13 (W.D. Pa. Apr. 1, 2015) (quoting *Walters ex rel. Walters v. Gen. Motors Corp.*, 209 F. Supp. 2d 481, 487 (W.D. Pa. 2002), *which cited Dansak v. Cameron Coca–Cola Bottling, Co.*, 703 A.2d 489, 496 (Pa. Super. Ct. 1997)).  Pennsylvania courts have recognized various types of circumstantial evidence upon which a plaintiff may rely when pursuing a manufacturing defect claim under the malfunction theory:

> (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

*Barnish*, 980 A.2d at 542-43 (quoting *Dansak*, 703 A.2d at 496) (further citation omitted).    With

that said, the Pennsylvania Supreme Court has held that:

> a plaintiff does not present a *prima facie* malfunction theory case if
> the plaintiff's theory of the case includes facts indicating that the
> plaintiff was using the product in violation of the product directions
> and/or warnings. In such a case, no reasonable jury could infer that
> an unspecified defect caused a malfunction when the more likely
> explanation  is  the  abnormal  use.

*Barnish*, 602 Pa. at 413.

Having carefully considered the evidence of record, it is this Court's opinion that Plaintiff

has not met her burden to demonstrate a genuine dispute of material fact that the Defy Breakage

relaxer was defective under the malfunction theory.  *Id*.  As is discussed in the preceding section,

*see* § IV.A.1, Plaintiff used the product on a single occasion and admits that she did not adhere to

all of the provided instructions and warnings in that she did not conduct a strand test to determine

how her hair would react to the product or how long it should be applied.  (Docket No. 38-2).

Given these admissions, "a reasonable jury could not infer that an unspecified defect caused a

malfunction when the more likely explanation is the abnormal use." *Barnish*, 602 Pa. at 413.

Beyond these deficiencies, which preclude a finding that the product malfunctioned,

Plaintiff has not presented any of the other types of potential evidence which would support an

inference that a manufacturing defect in the product was the proximate cause of her injury.  Indeed,

the only evidence introduced into the summary judgment record consists of excerpts of Plaintiff's

deposition, her responses to interrogatories and the product's packaging and instructions.  (*See*

Docket Nos. 38; 41).  To this end, Plaintiff has not presented any of the following: expert testimony

as to a variety of other possible causes; evidence of similar accidents involving the same product;

evidence eliminating other possible causes; or proof tending to show that this type of injury does

not occur absent a defect in the product.  (*See* Docket Nos. 40-41; 45).  At most, Plaintiff suggests

that she will present evidence at trial showing that the product has caused this type of injury to other individuals who followed the instructions and conducted the strand test. (Docket Nos. 40; 45). Of course, these types of allegations, without supporting evidence, are insufficient to create a genuine dispute of material fact at the summary judgment stage. *Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). Moreover, "'[t]he mere fact that an accident happens, [...], does not take the injured plaintiff to the jury,'" and Plaintiff "cannot rely on speculation, conjecture, or guesswork to meet" her burden to advance the claims beyond summary judgment. *Ellis v. Beemiller, Inc.*, 910 F. Supp. 2d 768, 779 (W.D. Pa. 2012) (quoting *Dansak*, 703 A.2d at 496)).

For all of these reasons, the Court finds that Plaintiff has failed to meet her burden to put forth evidence demonstrating a genuine dispute of material fact that the Defy Breakage relaxer was defective. *See Smith*, 251 F. Supp. 3d at 854-55. Accordingly, Defendants' motion for summary judgment is granted as to her claims relying upon proof of a manufacturing defect, i.e., strict liability and breach of implied warranty of merchantability.

### B. Insufficient Evidence of Misrepresentation and Justifiable Reliance

Plaintiff next asserts product liability claims under the UTPCPL and for common law fraud. (Docket No. 1-1). She alleges that misrepresentations on the packaging included: that the product is a "No-Lye Relaxer," implying that it is safe and contains non-caustic chemicals; offers

"exclusive salon haircare at home" with "90% less breakage"; and "patented Strengthening

Ceramide, and Coconut Oil, Defy Breakage Relaxer Kit helps replenish moisture for smooth,

healthy-looking hair. Supreme conditioning infused at every step, before, during and after

relaxing." (Docket No. 40 at 4-5). Defendants seek summary judgment on the basis that Plaintiff

has not met her burden to demonstrate that she justifiably relied upon any of the alleged

misrepresentations provided along with the Defy Breakage relaxer. (Docket Nos. 37; 44). Having

considered the matter, the Court once again agrees with Defendants and will grant their motion for

summary judgment as to these claims.

The UTPCPL provides a private right of action for consumers harmed by unfair methods

of competition or deceptive business practices. 73 P.S. § 201-9.2(a). Under the statute, it is

unlawful for manufacturers to represent "that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits or quantities that they do not have" and to represent "that

goods or services are of a particular standard, quality or grade, or that goods are of a particular

style or model, if they are of another." 73 P.S. § 201-2(4)(v), (vii). In order to maintain a cause of

action under the UTPCPL, a consumer must show that (1) she purchased or leased the good

primarily for consumer purposes, (2) she suffered some ascertainable loss, and (3) the loss resulted

from an unlawful method, act, or practice under the statute. *McDaniel*, 2015 WL 1326332, at \*9

(citing *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 201 (Pa. 2007)). Pennsylvania law also requires

a plaintiff alleging violations under the UTPCPL to prove that he "justifiably relied on defendant's

wrongful conduct or representation and that he suffered harm as a result of that reliance." *Id.*

(quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 584 A.2d 425, 438 (Pa. 2004)). This requires

proof that the plaintiff "justifiably bought the product in the first place (or engaged in some other

detrimental activity) because of the misrepresentation." *Id.* (citation omitted).

In similar vein, to establish a claim of fraud under Pennsylvania law, Plaintiff bears the burden of demonstrating: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) that the resulting injury was proximately caused by the reliance. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)).

After reviewing the parties' briefs and corresponding arguments, the Court concludes that Plaintiff has not meaningfully responded to Defendants' position that her deposition testimony undermines her claim that she justifiably relied upon any of the alleged misrepresentations her counsel points to on the products' packaging. (*See* Docket Nos. 40; 45). To reiterate, Plaintiff testified that when she purchased the Defy Breakage relaxer, she did not look at the exterior packaging other than to determine the strength of the product, which was listed on the box as "regular." (Docket No. 38-2 at 38). Plaintiff admitted that she did not read any of the warnings on the exterior of the box or the list of ingredients. (*Id*.). While she read the instruction sheet, there is simply no evidence in the record that she actually read the alleged misrepresentations in the product's marketing when she purchased and/or used the product, let alone relied upon any of those statements to her detriment. (*See* Docket Nos. 38; 38-2; 41). Without such evidence, Plaintiff has failed to meet her burden to create a genuine dispute of material fact for trial. Therefore, Defendants' motion for summary judgment on Plaintiff's UTPCPL and fraud claims is granted.

V.     CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment [36] is granted and all

of Plaintiff's claims will be dismissed, with prejudice.  Appropriate Orders follow.

_s/Nora Barry Fischer_
Nora Barry Fischer
U.S. District Judge

Dated:  September 14, 2018
cc/ecf:  All counsel of record.